**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Harry Eugene CLAIBORNE,
Defendant-Appellant.**

**No. 84–1009.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 24, 1984.

Decided March 5, 1984.

Before GIBSON, GARTH and KENNEDY, Circuit Judges.[*]

PER CURIAM:

This interlocutory appeal raises anew the issue whether the United States Constitution immunizes a sitting federal judge from criminal prosecution prior to his removal from office by the impeachment process. Appellant, Harry Eugene Claiborne, is a United States Judge for the District of Nevada. He was appointed to the bench in August, 1978. On December 8, 1983, a seven count indictment was returned against Claiborne. Count I of the indictment alleged that Claiborne solicited and received $30,000.00 from Joseph Conforte, a Las Vegas brothel owner, in return for being influenced in the performance of official acts— i.e., decisions regarding motions in a pending case. (18 U.S.C. § 201(c)). Count II alleged that Claiborne caused an interstate telephone conversation to be made in furtherance of a scheme to defraud Conforte. (18 U.S.C. § 1343). The scheme to defraud allegedly involved Claiborne's accepting $55,000.00 from Conforte in return for promising to secure the reversal of Conforte's criminal tax evasion conviction by bribing one or more judges on the Ninth Circuit Court of Appeals.[1]

Claiborne's trial is scheduled to begin on March 12, 1984. On January 3, 1984, Claiborne filed *inter alia* a motion to quash the indictment and to dismiss the proceedings against him, claiming the Constitution prohibits the criminal prosecution of an active federal judge before he is removed from office through the impeachment process. The district court judge[2] denied the motion by an amended order dated February 8, 1984. In that order, the trial court found

Steven A. Shaw, William C. Hendricks, III, Jan Nielsen, Little, Christopher G. Caldwell, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

William J. Raggio, John Squire Drendel, Reno, Nev., Oscar B. Goodman, Goodman, Terry, Stein & Quintana, Las Vegas, Nev., Terence J. Anderson, Robert S. Catz, School of Law, Univ. of Miami, Coral Gables, Fla., for defendant-appellant.

[*] Sitting by designation: the Honorable Floyd R. Gibson of the Eighth Circuit; the Honorable Leonard I. Garth of the Third Circuit; and the Honorable Cornelia G. Kennedy of the Sixth Circuit.

1. Count III of the indictment charges that Claiborne obstructed the administration of justice by urging a witness to give false testimony before a federal grand jury investigating Claiborne. (18 U.S.C. § 1503). Counts IV, V, and VI charge that Claiborne failed to report the bribes as income on his tax returns. (26 U.S.C. § 7206(1)). Count VII, unrelated to the other charges, alleged that Claiborne had knowingly failed to include an outstanding $75,000.00 loan on the financial disclosure form he filed with the Judicial Ethics Committee (18 U.S.C. § 1001).

2. The Honorable Walter E. Hoffman of the Eastern District of Virginia, sitting by designation.

Claiborne's claim "frivolous" and stated that the case would proceed to trial as scheduled on March 12, 1984. The district court also indicated its intention to hear other pre-trial motions on February 21, 1984. Claiborne filed an interlocutory appeal of this order with the Ninth Circuit Court of Appeals. Characterizing the district court's order as "a final collateral order", Claiborne claims this interlocutory appeal vested exclusive jurisdiction in this court pursuant to 28 U.S.C. § 1291 and divested the district court of jurisdiction to proceed. Claiborne also filed an application for writ of prohibition and mandamus, seeking to stay the trial court from proceeding until this court resolved the merits of his interlocutory appeal. By an order dated February 16, 1984, we declined to stay the district court's proceedings of February 21, 1984, without prejudice. Claiborne renewed his motion for a stay on February 17, 1984.

## I. *Appealability*

■ Claiborne's motion to dismiss was based upon the separation of powers principle of the Constitution and specific constitutional provisions which purportedly immunize a federal judge from criminal prosecution until he is removed from office by the impeachment process. As the parties agree, we have jurisdiction to review Claiborne's noncertified interlocutory appeal from the district court's dismissal of this claim.

■ Although 28 U.S.C. § 1291 limits appellate court's jurisdiction to "final decisions of the district courts", the Supreme Court has permitted departures from this rule where an interlocutory order falls into the "collateral order" exception announced in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Under that exception, an interlocutory order is immediately appealable if it "conclusively determines the disputed question, resolve[s] an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d

351 (1978); *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1981). In *Abney v. United States,* 431 U.S. 651, 659–60, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977), the Court, applying *Cohen,* held that an interlocutory order denying defendant's pre-trial motion to dismiss an indictment on double jeopardy grounds was immediately appealable. And in *Helstoski v. Meanor,* 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979), the Court held immediately reviewable a Congressman's pre-trial claim that the Speech and Debate clause immunized him from criminal prosecution. Both *Abney* and *Helstoski,* in addition to satisfying the other requirements of *Cohen,* involved "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Hollywood Motor,* 458 U.S. at 266, 102 S.Ct. at 3084. The defendants in those two cases raised claims based upon "the right not to be tried, which must be upheld prior to trial if it is to be enjoyed at all." *United States v. MacDonald,* 435 U.S. 850, 860–61, 98 S.Ct. 1547, 1552–53, 56 L.Ed.2d 18 (1978).

In *United States v. Hastings,* 681 F.2d 706 (11th Cir.), *stay denied,* —— U.S. ——, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1982), the court concluded that a claim identical to the one raised here was an appealable collateral order. The defendant there, as here, contended that, under the separation of powers principle, an active federal judge has an absolute right not to be indicted and tried in a federal court unless and until he is impeached and convicted by Congress and removed from office. The court stated:

Like the right secured by the speech or debate clause in *Helstoski* or the right secured by the double jeopardy clause in *Abney,* the right asserted by Hastings is the freedom from the obligation to endure a criminal trial which would be wholly deprived of meaning if he were forced to undergo trial before he could assert it.

(*Id.* at 708)

We agree with *Hastings* and conclude we have jurisdiction to review the merits of

Claiborne's claim. *See also United States v. Myers,* 635 F.2d 932, 935–36 (2nd Cir.1980) (Congressman's claim of immunity from criminal prosecution under separation of powers principle held immediately appealable.)

## II. *Merits*

■ Article III of the Constitution affords members of the federal judiciary substantial protections to assure their freedom from coercion or influence by the executive and legislative branches. Specifically, federal judges are appointed for life terms, subject only to removal by impeachment; they hold their offices "during good behavior"; and their compensation cannot be diminished during their continuance in office. *See United States ex rel. Toth v. Quarles,* 350 U.S. 11, 15–16, 76 S.Ct. 1, 4–5, 100 L.Ed. 8 (1955). In addition to these specific constitutional safeguards, federal judges, like state judges, enjoy an absolute common law immunity from civil liability for acts committed in their official capacity. *Stump v. Sparkman,* 435 U.S. 349, 355–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978).

■ However, in accordance with a system of checks of balances, the Framer's of the Constitution gave the legislative branch the power to deal with acts of misconduct by federal judges. Art. II, § 4 provides that "all civil officers of the United States [3] shall be removed from office on impeachment for, and conviction of, treason, bribery or other high crimes and misdemeanors". The House of Representatives is given the sole power of impeachment. Art. I, § 2. The Senate is given the sole power to try all impeachments. Art. I, § 3. The legislative power is limited insofar as the judgment entered after a conviction on impeachment cannot go beyond removal from office and disqualification to hold future office. Art. I, § 3. Also, "the party convicted shall nevertheless be liable and subject to indict-

ment, trial, judgment, and punishment according to law." Art. I, § 3 cl. 7.

There is no specific constitutional provision limiting the executive branch's power to prosecute federal judges on criminal charges; nor is there any provision excepting federal judges from the executive branch's broad authority "to take care that the laws be faithfully executed." Art. II, § 3. Claiborne, however, contends that the Constitution's grant to the legislative branch of the power to remove a judge for high crimes and misdemeanors and the general principles of separation of powers preclude the executive branch from prosecuting him on criminal charges unless and until he has been removed from office by impeachment.

■ Identical immunity claims were squarely faced and rejected in *United States v. Hastings,* 681 F.2d 706, 709–11 (11th Cir.), *stay denied,* —— U.S. ——, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1982) and *United States v. Isaacs,* 493 F.2d 1124, 1141–1144 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).[4] Both *Hastings* and *Isaacs* held that the Constitution does not immunize a sitting federal judge from the processes of criminal law. The sentiment underlying these holdings is that: "no man in this country is so high that he is above the law .... A judge no less than any other man is subject to the processes of the criminal law". *Hastings,* 681 F.2d at 711; *Isaacs,* 493 F.2d at 1133. We wholeheartedly agree with *Hastings* and *Isaacs* and are substantially guided by them in disposing of Claiborne's arguments.

Claiborne's first argument is that specific constitutional provisions give Congress the exclusive primary jurisdiction to try and punish federal judges for high crimes and misdemeanors through the impeachment

---

**3.** Federal judges are "civil officers" within the meaning of this clause. *Shurtleff v. United States,* 189 U.S. 311, 316, 23 S.Ct. 535, 536, 47 L.Ed. 828 (1903).

**4.** *Hastings* and *Isaacs* are the only two cases where an indicted federal judge has claimed

immunity from criminal prosecution prior to impeachment. Two other active federal judges were indicted on criminal charges, but neither raised the immunity issue. *See Hastings,* 681 F.2d at 706 n. 7.

process. He principally relies upon Article I, § 3 cl. 7 which states:

Judgment in cases of impeachment shall not extend further than to removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under the United States; but the party convicted shall, nevertheless, be liable and subject to indictment, trial, judgment, and punishment according to law.

According to Claiborne, this language means that a federal judge cannot be indicted and tried in an Article III court unless he has been removed from office by the impeachment process. Both *Isaacs* and *Hastings* rejected this tortured interpretation, concluding that § 3 was intended "to assure that after impeachment a trial on criminal charges is not foreclosed by the principle of double jeopardy." *Isaacs*, 493 F.2d at 1142, *citing* R. Berger, *Impeachment: The Constitutional Problem*, at 78–80 (1973); *Hastings*, 681 F.2d at 710. *Hastings* states:

[S]ection 3 represents an attempt by the framers to anticipate and respond to questions that might arise regarding the procedural right of the accused during the impeachment process. Like article III, § 2 cl. 3 which provides that the right to trial by jury does not extend to impeachment proceedings, section 3 serves to clarify the rights of civil officers accused of high crimes and misdemeanors, not to limit the jurisdiction of article III courts.

(footnotes omitted.)

We agree with the Fifth and Seventh Circuits' reading of Article I § 3 cl. 7.

Claiborne also contends the Constitution's vesting of impeachment power exclusively in the Congress precludes criminal prosecutions of sitting federal judges. Two very important assumptions underlie this contention. First, impeachment is the exclusive means of removing federal judges from office; and second, a criminal prosecution is the equivalent of removal from office. We, like the court in *Hastings,* are unwilling to accept this second assumption. *See Hastings,* 681 F.2d at 710 n. 10. In *Burton v. United States,* 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057 (1906), a United States Senator made the comparable claim that a criminal conviction was the equivalent of expulsion from the Senate, which required a two thirds vote of the Senate. The Court rejected this claim, stating: "the final judgment of conviction [does] not operate, *ipso facto,* to vacate the seat of the convicted Senator, nor compel the Senate to expel him or to regard him as expelled by force alone of the judgment". *Id.* at 369, 26 S.Ct. at 694. In *Chandler v. Judicial Council of the Tenth Circuit,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), both Mr. Justice Douglas and Mr. Justice Black noted the important distinction between criminal proceedings and impeachment proceedings against federal judges. Justice Black, while emphasizing that federal judges could be removed from office only by impeachment, stated that "judges, like other people, can be tried, convicted, and punished for crimes". *Id.* at 141–42, 90 S.Ct. at 1682–83. Justice Douglas stated that "[i]f they [federal judges] break a law they can be prosecuted. If they become corrupt or sit in cases in which they have a personal or family stake, they can be impeached by Congress." *Id.* at 140, 90 S.Ct. at 1682. Finally, the legislative history of the 1980 Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. § 372) is replete with statements recognizing that while Congress retains the exclusive power to remove federal judges from office for high crimes and misdemeanors, federal judges, like other people, are subject to criminal prosecution for their misdeeds.[5]

5. *Judicial Tenure and Discipline 1979–80: Hearings Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary,* 96th Cong. 1st and 2nd Sess. (1979–80).

Hunter, Elmo B., Judge, Western District of Missouri representing the Judicial Conference of the United States testified:

Certainly, the members of the Court Administration Committee and of the Judicial Conference have been especially sensitive to that concern. They recognize that judges

Claiborne's second line of argument finds its source in the salutary principles of separation of powers and judicial independence. Like the defendant in *Hastings*, he asserts that the judiciary would be subject to intolerable pressures from the executive branch if executive officers were permitted to prosecute active federal judges. He avers that immunity from criminal liability is a necessary complement to the specific safeguards of Article III—most significantly, life tenure during good behavior. We disagree.

Article III protections, though deserving utmost fidelity, should not be expanded to insulate federal judges from punishment for their criminal wrongdoing. *See Isaacs,* 493 F.2d at 1143. *Hastings,* 681 F.2d at 711. As the Supreme Court stated in *United States v. Lee,* 106 U.S. 196, 220, 1 S.Ct. 240, 260, 27 L.Ed. 171 (1882):

> No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with

have no right to be insulated from the consequences of their own misbehavior when it impairs the proper operation of the courts and the administration of justice.

. . . . .

*First, I would like to turn to a consideration of the kind of conduct involved in our problem. We need not discuss criminal conduct as such. Federal and State criminal statutes apply to every Federal judge just as they apply to any other citizen.*
*Id.* at 54–55. (Emphasis added).

Rodino, Peter W. (Rep. D. NJ) Chm. House Judiciary Committee testified:

> I believe [the impeachment process] was designed so in order that we be very careful and very deliberate about the application of this process of impeachment, and I think that if we look back, *we find that impeachment being an action that is taken only as of last resort, really would serve us well only in such instances and only after all other possible actions may have been taken to cure whatever the problem may have been.*

. . . . .

*I just want to remind you that the Constitution itself provides that impeachment is no substitute for the ordinary application of the criminal laws, since in article I, section 3, it specifies that impeachment does not immunize the officer from criminal liability for his wrongdoing, and indeed may be brought to the bar of justice for the violation of any criminal statute.*

Kastenmeier, Robert W., Chairman of Subcommittee stated:

> I would certainly concur with what the chairman [Rodino] said, that impeachment doesn't mean that you only try people who are guilty of violation of criminal laws; nor does it mean that you cannot be subjected to punishment under the criminal laws, even though impeachment does not occur.
> *Id.* at 138.

McClory, Robert, ranking minority member stated:

> *For instance, if a circuit council received evidence that a crime had been committed, it would be inappropriate, it seems to me, to refer it to the Judiciary Committee for impeachment. Instead, it should be referred to a grand jury to*

determine whether or not the person should be indicted and tried. I believe that we want to avoid in legislation a requirement that all cases should be referred to the House Judiciary Committee for impeachment.
*Id.* at 141. (emphasis added).

Rosenberg, Maurice, Asst. Atty. Gen. Office for Improvements in the Admin. of Justice, stated:

> In terms, impeachment applies only if the offense is treason, bribery, high crimes, and other misdemeanors, but misconduct of that kind is, of course, a criminal offense and will be prosecuted criminally. Just a few days ago, on March 27, Chairman Rodino and the ranking minority member, Mr. McClory, testified that in the event criminal actions are brought against a Federal judge, as I understand it, the Judiciary Committee on the House side will stay its hand as far as impeachment proceedings are concerned until the criminal proceedings have run their course. If they eventuate in a conviction, then I don't expect that we will see in the future—we have not seen in the past—any judge remain on the bench after his conviction of an impeachable crime.

> That means if the sequence is criminal process first, then impeachment, we simply are not going to see impeachment used. The criminal process is so much broader than the impeachment process that impeachment is sort of a supplement to prosecution, its purpose being to remove a judge convicted of a serious crime. Impeachment is not going to be often-used or effective if there is need for taking action against judges who have been guilty of reprehensible behavior that doesn't rise to the level of criminal prosecutability.

*See also* S.Rep. No. 362, 96th Cong. 1 Sess. 4 (1979), *reprinted in* [1980] U.S.Code & Ad. News 4315, 4318–19; H.R.Rep. No. 1313, 96th Cong., 2d Sess. 5 (1980).

Claiborne suggests the 1980 Act includes a determination by Congress that active federal judges may not be prosecuted by the Executive. In view of the foregoing legislative history and the language of the 1980 Act, we agree with *Hastings* that this claim is totally devoid of merit. *See Hastings,* 681 F.2d at 712 n. 20.

impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.

It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives.

The Supreme Court has applied *Lee's* rationale in rejecting Congressmen's claims that they were immunized from criminal prosecution prior to expulsion. *See Burton v. United States,* 202 U.S. 344, 368, 26 S.Ct. 688, 693, 50 L.Ed. 1057 (1906); *United States v. Brewster,* 408 U.S. 501, 516–20, 92 S.Ct. 2531, 2539–41, 33 L.Ed.2d 507 (1972). In *Brewster,* for example, a Senator charged with having taken a bribe (18 U.S.C. § 201) claimed that the Speech or Debate clause precluded criminal prosecution. The Court rejected this claim stating:

Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, but no more than the statutes we apply, was its purpose to make members of Congress supercitizens, immune from criminal responsibility.

.     .     .     .     .

The sweeping claims of appellee would render members of Congress virtually immune from a wide range of crimes simply because the acts were peripherally related to their holding office.

.     .     .     .     .

Depriving the Executive of the power to investigate and prosecute ... bribery is unlikely to enhance legislative independence.

*Id.* at 516, 520, 525, 92 S.Ct. at 2539, 2541, 2544.

We similarly think it unlikely that judicial independence would be measurably diminished by subjecting judges to the processes of criminal laws. First, aside from

Article III safeguards, judges enjoy the same protection as ordinary citizens do from vindictive prosecution. *Hastings,* 681 F.2d at 711. Second, as *Brewster* emphasized, a criminal prosecution encounters several procedural barriers—such as the indictment, burden of proof, and presumption of innocence. The Court in *Isaacs,* referring to these and other procedural safeguards afforded a criminal defendant, concluded that the independence of the judiciary is better served when criminal charges against judges are tried in court rather than in Congress. *Isaacs,* 493 F.2d at 1144. Indeed, it is all too well known that the impeachment process is particularly cumbersome, time consuming, and susceptible to political whim and emotional reaction. Third, the possible abuse by the executive branch is minimized because "[t]he check and balance mechanism, buttressed by unfettered debate in an open society with a free press, has not encouraged abuses of power or tolerated them long when they arose." *Brewster,* 408 U.S. at 520, 92 S.Ct. at 2541. Finally, it is important to recognize that "criminal conduct is not part of the necessary functions performed by public officials. Punishment for that conduct will not interfere with the legitimate operation of a branch of government." *Isaacs,* 493 F.2d at 1144. As perceptively noted in *Brewster,* 408 U.S. at 526, 92 S.Ct. at 2544: "Taking a bribe is, obviously, no part of the legislative process or function". This applies equally to the judicial branch.

In support of his claim that judicial independence will be substantially diminished without criminal immunity, Claiborne focuses on the practical consequences of an acquittal on criminal charges. He suggests that, if acquitted, his impartiality will be called into question every time he sits in a case in which the executive branch is a party. Purportedly, this will unduly diminish Claiborne's judicial authority and disrupt the judiciary's ability to administer its own affairs.

Though this argument has some persuasive appeal it does not carry the day. First, we think Claiborne has overstated the

ability of the executive branch to force the recusal of an acquitted federal judge on bias grounds. The Supreme Court has stated that the trial judge's bias is presumed only where the judge has a personal or financial stake in the outcome or has been the target of personal abuse or criticism. *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *Taylor v. Hayes,* 418 U.S. 488, 501–03, 94 S.Ct. 2697, 2704–05, 41 L.Ed.2d 897 (1974); *see also* S.Rep. No. 419, 93d Cong. 1st Sess. 5 (1973). (The "appearance of impartiality" test of 28 U.S.C. § 455(a) was not intended to "warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial.") The second and more compelling reason we reject Claiborne's claim is that the proposed solution to the problem is much worse than the problem itself. As *Hastings* states, "the minuscule incremental judicial independence that might be derived from [a rule granting sitting federal judges immunity from criminal prosecution] would be outweighed by the tremendous harm that the rule would cause to another treasured value of our constitutional system: no man in this country is so high that he is above the law." 681 F.2d at 711. It can scarcely be doubted that the citizenry would justifiably lose respect for and confidence in a system of government under which judges were apparently held to be above the processes of the criminal law.[6]

### III. *Non-appealable Claim*

Claiborne's second claim on this appeal is that the government's investigation and prosecution was motivated by a desire to retaliate against him for the manner in which he had exercised the functions of his office. He claims that the constitutional principal of an independent federal judiciary requires that the district court hold pre-trial evidentiary hearings to determine whether the executive's prosecution was improperly motivated.

■ Claiborne raises what is essentially a vindictive or selective prosecution claim, which is not immediately appealable under "the collateral order" exception. *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 270, 102 S.Ct. 3081, 3085, 73 L.Ed.2d 754 (1982). Under the logic of *Hollywood Motor,* such a claim fails to meet *Cohen's* requirement of being "effectively unreviewable on appeal from final judgment." To afford Claiborne the interlocutory relief he seeks in the name of judicial independence would have the effect of giving him more protection that ordinary citizens raising similar claims enjoy. *See Hastings,* 681 F.2d at 711.

### IV. *District Courts Jurisdiction to Proceed*

Having determined that Claiborne's first claim, though appealable, lacks merit, we

---

**6.** In urging *Hastings* and *Isaacs* were wrongly decided, Claiborne relies heavily on *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). Both cases are inapposite and of no aid to Claiborne. *Northern Pipeline,* which invalidated the Bankruptcy Act of 1978 insofar as it conferred Article III powers on non Article III judges, simply emphasized the importance of providing Article III judges with the appropriate protections of salary stability and life tenure. *Nixon v. Fitzgerald,* giving the President absolute immunity from civil damages for his official acts, merely cites cases recognizing that judges are absolutely immune from civil liability for acts committed in their official capacity. The "public interest" justification for granting immunity in civil suits against judges would not similarly apply to criminal actions. *See O'Shea v. Littleton,* 414 U.S. 488, 503, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974), where the court states:

> [W]e have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivations of Constitutional rights. *Cf. Ex parte Virginia,* 100 U.S. 339 [25 L.Ed. 676] (1880). On the contrary, the judicially fashioned doctrine of official immunity does not reach "so as to immunize criminal conduct proscribed by an Act of Congress . . . ." *Gravel v. United States,* 408 U.S. 606, 627 [92 S.Ct. 2614, 2628, 33 L.Ed.2d 583] (1972).

*Cf. Dennis v. Sparks,* 449 U.S. 24, 28 n. 5, 101 S.Ct. 183, 187 n. 5, 66 L.Ed.2d 185 (1980) (1980) (state judge who is immune from civil liability is not immune from criminal liability).

must determine whether the district court ever lost jurisdiction to proceed. Specifically, we must decide whether the district court had jurisdiction to hear the pre-trial motions of February 21, 1984.

■ Ordinarily, if a defendant's interlocutory claim is considered immediately appealable under *Abney*, the district court loses its power to proceed from the time the defendant files its notice of appeal until the appeal is resolved. *United States v. Yellow Freight System, Inc.*, 637 F.2d 1248, 1252 (9th Cir.1980), *citing Moroyoqui v. United States*, 570 F.2d 862, 864 (9th Cir.1977), *cert. denied*, 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 86 (1978); *United States v. Garner*, 663 F.2d 834, 837–38 (9th Cir.1981); *United States v. Burt*, 619 F.2d 831, 838 (9th Cir. 1980). *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). This divestiture of jurisdiction rule is not based upon statutory provisions or the rules of civil or criminal procedure. Instead, it is a judge made rule originally devised in the context of civil appeals to avoid confusion or waste of time resulting from having the same issues before two courts at the same time. *United States v. Leppo*, 634 F.2d 101, 104 (3rd Cir.1980); *United States v. Hitchmon*, 602 F.2d 689, 691–92 (5th Cir.1979) (en banc). Given this purpose, it has been suggested that "the rule should not be employed to defeat its purpose or to induce needless paper shuffling." 9 J. Moore, *Federal Practice*, ¶ 203.11 at 3–44 n. 1 (1980); *see also* C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure*, § 3949, at 358–59 (1977).

The divestiture rule takes on added significance when applied to interlocutory *Abney*-type criminal appeals since two important countervailing policies are at work. On the one hand, a defendant raising a meritorious *Abney*-type claim—asserting a valid, constitutional "right not to be tried" —would be irreparably harmed if the trial court continued to proceed to trial prior to

the disposition of the appeal. On the other hand, under an automatic divestiture rule, a defendant raising a meritless *Abney*-type claim could significantly delay and disrupt criminal trial court proceedings. *Burt*, 619 F.2d at 838. *See also Abney*, 431 U.S. at 656–57, 97 S.Ct. at 2038–39 ("the delays and disruptions attendant upon intermediate appeal ... are especially inimical to the effective and fair administration of the criminal law"). The Court in *Abney*, mindful of the need to balance these two interests, directed appellate courts to exercise their supervisory powers to establish summary procedures for quickly disposing of frivolous, dilatory pre-trial appeals.

The Fifth Circuit in *United States v. Dunbar*, 611 F.2d 985, 987–89 (5th Cir.), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980) (en banc; twenty five judges) followed *Abney's* directive and adopted the "dual jurisdiction" rule that "appeal from the denial of a frivolous [*Abney*-type] motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous." This approach has been uniformly followed by other circuits. *United States v. Leppo*, 634 F.2d 101, 104 (3rd Cir.1980); *United States v. Head*, 697 F.2d 1200, 1204 n. 4 (4th Cir.1982); *United States v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1982); *United States v. Cannon*, 715 F.2d 1228 (7th Cir.1983); *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir.1982) (en banc).

■ The Ninth Circuit [7] implicitly adopted *Dunbar's* dual jurisdiction approach in *United States v. Spilotro*, 680 F.2d 612, 615 (9th Cir.1982) and in *United States v. Crozier*, 674 F.2d 1293, 1297 (9th Cir.1982). Both *Spilotro* and *Crozier* held that the interlocutory review of a collateral order restraining the sale or transfer of defendant's property did not divest the district court of jurisdiction to proceed. The Ninth Circuit, however, has yet to adopt *Dunbar* in the context of an *Abney*-type claim in-

**7.** Sitting as special panel for the Ninth Circuit, we are bound by applicable Ninth Circuit case law.

volving a "right not to be tried". This reluctance is due to the Ninth Circuit's concern that a defendant who has raised a meritorious *Abney*-type claim would be irreparably harmed if the trial court were allowed to proceed to trial prior to the appellate court's disposition of the claim. *Burt,* 619 F.2d at 838. This concern is not as vitally involved when only pre-trial hearings proceed in the district court rather than the trial itself. Because this court has now determined that Claiborne's asserted "right not to be tried" claim lacks merit, the trial court's continuation of pre-trial hearings was harmless. Requiring the district court to rehear and rule again on the same matters would achieve nothing other than to significantly disrupt and delay an ongoing criminal trial, a result running afoul of the purpose behind the divestiture rule and the court's dictum in *Abney.* As the court stated in *Leppo,* 634 F.2d at 104, "[a] ritualistic application of the divestiture rule in the *Abney* context conflicts with the public policy favoring rapid adjudication of criminal prosecutions."

The district court scrupulously followed the procedures set forth in *Dunbar* by finding, as a predicate to its assertion of retained jurisdiction, that Claiborne's separation of powers claim was frivolous. Though we now disagree with that characterization of Claiborne's claim, no useful purpose would be served by requiring that court to redecide the pre-trial motions of February 21, 1984. Under the circumstances, therefore, it was harmless for the district court to proceed to hear the motions of February 21, 1984. *See Hastings,* 681 F.2d at 709, n. 4. (Court, while characterizing defendant's separation of powers claim as "nonfrivolous", nevertheless recognized that under *Dunbar* "the trial court could have determined that the issues raised ... were frivolous and then proceeded to trial without awaiting the determination of the court of appeals").

However, in view of the jurisdictional problems to which we have referred, we suggest that the district court re-enter on the record the motions, findings, and other matters contained in the hearing transcript of February 21, 1984, without the need for reargument or retaking testimony.

We therefore affirm the district court's order denying Claiborne's motion to quash the indictment; we deny the petitions for writs of mandamus and prohibition, and deny as moot the renewed motion for a stay. Let the mandate issue forthwith.