COMMONWEALTH OF
PENNSYLVANIA,
Petitioner,

v.

Honorable Clarence C. NEWCOMER, United States District Judge for the Eastern District of Pennsylvania, Nominal Respondent,

United States Postal Service,
Respondent.

No. 79–2356.

United States Court of Appeals,
Third Circuit.

Argued Dec. 10, 1979.

Decided March 31, 1980.

Michael F. Henry (argued), Suzanne McDonough, Steven H. Goldblatt, Edward G. Rendell, Philadelphia, Pa., for petitioner.

Edward S. G. Dennis, Jr., Asst. U.S. Atty. (argued), Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for respondent.

Before ALDISERT, HUNTER and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

We are presented by the Commonwealth of Pennsylvania with a petition for a writ of mandamus to compel United States District Judge Clarence Newcomer to remand to state court a state criminal prosecution against a federal postal employee. The case was removed to federal district court by the defendant pursuant to 28 U.S.C. § 1442(a)(1) which provides for removal of cases against "[a]ny officer of the United States . . . for any act done under color of such office."[1] Because we believe this case satisfies the requirements of section 1442(a)(1) and because we believe the petition was filed within the time constraints of 28 U.S.C. § 1446(c),[2] we will deny the petition for mandamus.

### I

While driving his mail route on March 22, 1979, Ronald Jordan, a truck driver of the United States Postal Service, was involved in an accident which claimed the life of a pedestrian. Jordan was charged with vehicular homicide.[3]

The defendant was convicted in a bench trial in the Municipal Court of Philadelphia. He then filed for a trial de novo in the court of common pleas. On the day before his arraignment in common pleas court, the defendant petitioned for removal to the United States District Court for the Eastern District of Pennsylvania. The petition alleged, *inter alia*, that at the time of the accident "Ronald Jordan was acting as an

---

1. 28 U.S.C. § 1442 provides in relevant part:

    (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

    (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . .

2. 28 U.S.C. § 1446(c)(1) provides in relevant part:

    A petition for removal of a criminal prosecution shall be filed not later than thirty days

after the arraignment in the State court, or at any time before trial, whichever is earlier

. . . ..

28 U.S.C. § 1446(c)(1) (Supp.1977).

3. 75 Pa.Cons.Stat.Ann. § 3732 (Purdon 1977) provides:

    Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.

employee of the United States Postal Service . . . within the scope of his office and employment as a postal truck driver."

The Commonwealth moved for a remand to state court, arguing that removal was improper because the defendant did not allege that he was acting under "color of law or in the performance of his duties", and that negligent driving by postal employees did not constitute such action. The Commonwealth also contended that the removal was not timely, having been filed subsequent to trial in the municipal court. The motion to remand was denied by the district court. The Commonwealth then filed this petition for mandamus to compel the remand of the case.

## II

■ Our jurisdiction over this case derives from 28 U.S.C. § 1651 which grants us the power to "issue all writs necessary or appropriate in aid of [our] . . . jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (1976). The writ of mandamus, however, is a drastic remedy, which is reserved for use in extraordinary situations. *Kerr v. United States,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *Roberts v. United States District Court,* 339 U.S. 844, 845, 70 S.Ct. 954, 955, 94 L.Ed. 1326 (1950). Two factors militate in favor of this restraint in the use of the writ. First, and most important, overuse of the writ imperils the policy of avoiding piecemeal litigation. *Kerr v. United States,* 426 U.S. at 403, 96 S.Ct. at 2124; *see Citibank, N. A. v. Fullam,* 580 F.2d 82, 89 (3d Cir. 1978). Second, a mandamus action places the district judge in the role of litigant, "obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him" in the underlying case. *Kerr v. United States,* 426 U.S. at 402, 96 S.Ct. at 2123 (quoting *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384–85, 74 S.Ct. 145, 148–149, 98 L.Ed. 106 (1953)).

■ The writ of mandamus has been analogized to equitable remedies, to be granted or withheld in the discretion of the issuing court. *See Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 25–26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Thus, mandamus should not issue where other adequate remedies exist. *Kerr v. United States,* 426 U.S. at 403, 96 S.Ct. at 2124; *Roche v. Evaporated Milk Ass'n,* 319 U.S. at 26, 63 S.Ct. at 941. It has also been stated that the party seeking mandamus establish his right by a "clear and indisputable" showing. *Kerr v. United States,* 426 U.S. at 403, 96 S.Ct. at 2124 (quoting *Bankers Life & Cas. Co. v. Holland,* 346 U.S. at 384, 74 S.Ct. at 148).

■ Notwithstanding the limits on its use, the denial of a motion to remand to state court a state criminal prosecution which was remvoved to federal district court has traditionally been deemed an extraordinary case for which mandamus is appropriate. *Roche v. Evaporated Milk Ass'n,* 319 U.S. at 31 n. 5, 63 S.Ct. at 944 n. 5; *see Colorado v. Symes,* 286 U.S. 510, 520, 52 S.Ct. 635, 638, 76 L.Ed. 1253 (1932); *Maryland v. Soper (No. 1),* 270 U.S. 9, 29–30, 46 S.Ct. 185, 189, 70 L.Ed. 449 (1926). When a criminal prosecution is removed, the federal judiciary interferes with the state's fundamental interest in the administration of its own criminal justice system. *Maryland v. Soper,* 270 U.S. at 29, 46 S.Ct. at 189; *see Will v. United States,* 389 U.S. at 95, 88 S.Ct. at 273. Moreover, it was reasoned that

Except by the issue of mandamus, [the State] is without an opportunity to invoke the decision of this Court upon the issue it would raise. The order of the United States District Judge refusing to remand is not open to review on a writ of error, and a judgment of acquittal in that court is final.

*Maryland v. Soper,* 270 U.S. at 30, 46 S.Ct. at 189; *see Roche v. Evaporated Milk Ass'n,* 319 U.S. at 31 n. 5, 63 S.Ct. at 944 n. 5.

■ These cases, however, precede *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) which first

enunciated the collateral order doctrine of appealability. *See In re Fine Paper Antitrust Litigation,* 617 F.2d 22 at 25, No. 79–1929, slip op. at 6 (3d Cir. Feb. 21, 1980). That doctrine permits review of an order as a final order prior to the termination of the underlying action when the order "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). In the instant case no effort was made to secure collateral order review of the denial of the motion to remand. But we need not decide whether direct appeal was available under *Cohen,* for even if it was, we will not preclude the use of mandamus in this case. This court has previously noted that mandamus and appeal may lie simultaneously where, as assumed here, the policy of avoiding piecemeal litigation stressed in *Kerr* would not be implicated. *See Citibank, N. A. v. Fullam,* 580 F.2d at 89. We believe it would be unjust to penalize a litigant for reliance upon *Citibank* and its interpretation of *Kerr,* particularly because the time for filing an appeal has run and no adequate remedy other than mandamus now exists. We note, however, that *Citibank* did not consider the policy enunciated in *Kerr* against forcing federal judges into the role of defendants. Moreover, *Citibank's* statement was linked to the fact that in that case direct appeal was found to be an insufficient remedy. *Id.* at 89–90. Therefore, for the future, we note that this court will be hesitant to invoke the extraordinary and discretionary remedy of mandamus in cases where appeal as of right is available pursuant to the collateral order doctrine.

## III

Having decided that it is appropriate to consider the mandamus remedy in the instant case, we must still determine whether mandamus should issue to compel a remand of the prosecution. For this, we must determine whether removal of the prosecution was proper under 28 U.S.C. § 1442 and whether it was timely under 28 U.S.C. § 1446.

Section 1442 is the successor to a long line of statutes which find their genesis in an 1815 temporary customs removal statute, Act of Feb. 4, 1815, § 8, 3 Stat. 195, 198, and the "Force-Bill" of 1833, Act of March 2, 1833, § 3, 4 Stat. 632, 633, which provided for removal of civil suits or of prosecutions for acts done under the customs laws. *See Willingham v. Morgan,* 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and The Federal System 1335–1337 (2d ed. 1973) [hereinafter cited as Hart & Wechsler]. Subsequent statutes were enacted to provide for removal of suits growing out of the enforcement of revenue laws, *see, e. g.,* Judicial Code of 1911, Act of March 3, 1911, § 33, 36 Stat. 1097; *see generally, Maryland v. Soper,* 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 until, in 1948, the language was expanded to cover all federal officers. *See Willingham v. Morgan,* 395 U.S. at 405–406, 89 S.Ct. at 1815; Hart & Wechsler, *supra,* at 1335–1336.

In its present form, the statute provides for removal of actions against "any officer of the United States, . . . or person acting under him, for any act *under color of such office.*" 28 U.S.C. § 1442(a)(1) (1976) (emphasis added). The color of office test has repeatedly been interpreted to require a "'causal connection' between the charged conduct and asserted official authority." *Maryland v. Soper,* 270 U.S. at 33, 46 S.Ct. at 190; *Willingham v. Morgan,* 395 U.S. at 409, 89 S.Ct. at 1817. "It is enough that [petitioner's] acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution." *Maryland v. Soper,* 270 U.S. at 33, 46 S.Ct. at 190; *see Willingham v. Morgan,* 395 U.S. at 409, 89 S.Ct. at 1817. So, for example, in *Willingham,* in the face of allegations of wrongs against a prison inmate, the prison warden was held to have satisfied this causal connection merely by the fact that he was on duty, at his place of employment, at all

relevant times. *Willingham v. Morgan,* 395 U.S. at 409, 89 S.Ct. at 1817.

■ Similarly, we believe that the defendant has satisfactorily demonstrated in his petition and the accompanying papers, the necessary causal connection in this case between his federal authority to drive a postal truck and the acts involved in the accident which are the basis for the instant prosecution, acts which occurred while he was acting as an employee of the postal service, while driving a postal truck, within the scope of his office. We recognize that the facts of this case are one step removed from a prosecution specifically for conduct explicitly required by the defendant's federal office, such as a prosecution for violation of a state statute outlawing the collection of federal taxes, or for false imprisonment or kidnapping brought against a federal officer for making an arrest. *See generally Tennessee v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1880) (removal to protect against state prosecution for act warranted by the federal authority possessed by defendant). However, we believe that the liberal construction to be afforded the statute, *see Willingham v. Morgan,* 395 U.S. at 406, 89 S.Ct. at 1815; *Colorado v. Symes,* 286 U.S. at 517, 52 S.Ct. at 637, and the interpretation of "color of office" supplied by *Willingham* compel our result in this case.

■ The Commonwealth has called to our attention several district court cases in which removal was denied to postal employees sued for negligent driving. *See, e. g., Ebersole v. Helm,* 185 F.Supp. 277 (E.D.Pa. 1960); *Goldfarb v. Muller,* 181 F.Supp. 41 (D.N.J.1959); *Oklahoma v. Willingham,* 143 F.Supp. 445 (E.D.Okla.1956). We note, however, that these cases preceded *Willingham v. Morgan.* Moreover, these cases typically were influenced by the absence of a federal defense raised by the defendant. *See Oklahoma v. Willingham,* 143 F.Supp. at 448; *Goldfarb v. Muller,* 181 F.Supp. at 47. We do not believe allegations of a

federal defense to be essential for removal.[4] The original removal statutes were enacted not so much to provide federal forums for federal defenses, as to protect federal officers from interference with the operations of federal government by the state. *See Tennessee v. Davis,* 100 U.S. 257, 25 L.Ed. 648 (1880); Amsterdam, *Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trial,* 113 U.Pa.L.Rev. 793, 806–10 (1965). Moreover, it is well settled that a defendant need not admit that he actually committed the charged offenses. *Willingham v. Morgan,* 395 U.S. at 408, 89 S.Ct. at 1816; *Maryland v. Soper,* 270 U.S. at 32–33, 46 S.Ct. at 190. As the Court noted in *Soper,* removal would be available to an officer who denied any relationship to the charged offense. In such a case, of course, the denial does not involve a federal defense. We therefore believe that the appropriate standard is not the presence of a federal defense, but rather, as applied in *Willingham v. Morgan,* the causal connection between the charged conduct and federal authority, a connection which we believe exists in this case.

■ Having found the requisite facts to support the necessary causal connection, we reject the Commonwealth's argument that the failure specifically to allege "color of office" in the removal petition is fatal to removal. The failure to track the language of the removal statute will not preclude an otherwise valid removal.

IV

■ Finally, we consider the Commonwealth's contention that the removal was not timely, as the petition for removal was filed subsequent to the defendant's trial in the municipal court. 28 U.S.C. § 1446(c)(1) provides that "[a] petition for removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial,

---

4. *Willingham v. Morgan* relied heavily on the presence of a federal defense in that case and concluded that the presence of the federal defense was sufficient for removal. 395 U.S.

406–407, 89 S.Ct. at 1815–1816. Nowhere, however, did the Court intimate that a federal defense was necessary for removal.

whichever is earlier . . .." 28 U.S.C. § 1446(c)(1) (Supp.1977). Because in this case the removal petition was filed prior to thirty days after the arraignment of defendant in common pleas court and before his trial de novo in that court, we deny the petition for mandamus.

In order to evaluate the timeliness of the removal petition in this case, it is necessary to examine the two tiered criminal justice system which exists in Philadelphia. 42 Pa.Cons.Stat.Ann. § 1123 provides that certain criminal offenses[5] shall be first tried before the Philadelphia Municipal Court. In such cases "the defendant shall have no right of trial by jury in the municipal court, but shall have the right of appeal for trial de novo, including the right of trial by jury, to the court of common pleas." 42 Pa.Cons. Stat.Ann. § 1123(a)(2) (Purdon 1979 Pamphlet). The de novo proceeding, however, is not an appellate review of the municipal court record. The common pleas court is not permitted merely to affirm the decision of the municipal court. *See, e. g., Commonwealth v. Alton,* 209 Pa.Super. 168, 224 A.2d 792 (1966); *Commonwealth v. Young,* 184 Pa.Super. 658, 135 A.2d 774 (1957). Instead, the case proceeds to trial as if it originated in the common pleas court and the court is in no way bound by findings or judgments of the lower court. *Commonwealth v. Moore,* 226 Pa.Super. 58, 61, 312 A.2d 422, 423 (1973) (comparing Pennsylvania procedure to the Kentucky system discussed in *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)); *see* Pa.R.Crim.P. 6010. The case proceeds "with the slate wiped clean," "as if no trial whatever had been had in the court below." *Id.* at 61, 312 A.2d at 423; *Commonwealth v. White,* 228 Pa.Super. 23, 27 & n. 5, 324 A.2d 469, 471 & n. 5 (1974) (quoting in part *Southern Union Gas Co. v. Taylor,* 82 N.M. 670, 486 P.2d 606 (1971)).

We are aware of only one court which has faced the question of the interaction between a two-tiered criminal justice system

similar to the system in Philadelphia and the "before trial" requirement of section 1446(c). In *Calhoun v. City of Meridian,* 355 F.2d 209 (5th Cir. 1966), the Fifth Circuit ruled that a petition for removal, filed subsequent to the summary first level trial, but prior to the trial de novo was timely under section 1446(c). The court noted that under the law of Mississippi

> "When a cause is removed to the circuit court on appeal from [an inferior] court, the jurisdiction acquired by the circuit court is not in any proper sense appellate. The circuit court in such cases, has no authority to merely review and affirm or reverse the judgment of the [inferior court], but the case must be tried anew as if it were originally instituted in the circuit court . . .."

*Id.* at 211.

The Commonwealth would have us distinguish *Calhoun* on numerous grounds. Specifically, we are told that the Mississippi court in *Calhoun* was a police court, not a court of record, that *Calhoun* involved a summary offense, not a misdemeanor, that the defendant could not waive his summary proceeding in *Calhoun,* and finally, that its *de novo* statute in *Calhoun* was considered "unusual." The Commonwealth, however, has not demonstrated how these distinctions are relevant to our purposes, nor do we perceive any relevance.

The Supreme Court, early on, discussed the policy behind requiring removal "before trial." The court stated that the removal acts "do not contemplate that a party may experiment on his case in the state court, and, upon an adverse decision, then transfer it to the Federal court." *Rosenthal v. Coates,* 148 U.S. 142, 147, 13 S.Ct. 576, 577, 37 L.Ed. 399 (1893); *accord, Removal Cases,* 100 U.S. 457, 473, 25 L.Ed. 593 (1879). In *Rosenthal,* the case which was eventually removed had been instituted in state court, decided, appealed to the state supreme court and reversed in a decision adverse to

---

**5.** Specifically, the Philadelphia Municipal Court has jurisdiction over criminal offenses "for which no prison term may be imposed or which are punishable by imprisonment for a term of

not more than five years, including indictable offenses under Title 75 (relating to vehicles.)" 42 Pa.Cons.Stat.Ann. § 1123(a)(2) (Purdon 1979 Pamphlet).

the removing party. Prior to entry of final judgment pursuant to the order of the state supreme court, the case was removed. In *The Removal Cases,* the removal was upheld as being filed before the court began the trial. Although the language of "experimentation" in the state courts could be read as precluding the municipal trial in the instant case, we do not believe the Supreme Court considered the effects of a two tiered system. Indeed, the facts of *Rosenthal,* in which a decision had been entered against the removing party which could be avoided, if at all, only by removal, suggest that the court sought to prevent a party from removing a case to avoid the effects of adverse decisions or proceedings in the state courts. Removal prior to a trial de novo in this case does not run afoul of this purpose. Any adverse effects of the first trial are explicitly avoided by the state procedure of trial de novo in which the case is begun anew.[6] The removant stands in no better stead after the removal, than he would be had he remained in state court. He is entitled anew to a full trial. This entitlement derives from the law of Pennsylvania, not from the removal. Moreover, we note that a defendant could not, under the de novo scheme of Pennsylvania, abuse the privilege of removal by "testing the waters" in state court prior to removing to the federal district court. The waters of the court of common pleas are as uncharted for defendant as those of the federal court.

We therefore hold the removal to have been filed within the requirements of § 1446(c). The petition for mandamus will be denied.

---

6. The Commonwealth argues that this is not entirely true since pretrial suppression hearings held before the municipal court are binding on the defendant in the court of common pleas. *Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 895 (1976). We note, however, that on motions to suppress, the municipal court judge ["sits] as a common pleas court judge," *Id.* at 493–94, 366 A.2d at 897, so that in such cases, proceedings may be deemed to have begun before the common pleas court. In any event, the effect of such a proceeding is not before us in this case and we need not decide whether removal subsequent to a suppression hearing violates section 1446(c).