**STATE OF GEORGIA**

v.

**Thomas M. WESTLAKE, Jr., Defendant.**

**No. 5:96–CR–10(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

June 27, 1996.

---

Harry J. Fox, Jr., Macon, GA, for defendant.

Edward Lukemire, Perry, GA, for U.S.

FITZPATRICK, District Judge.

Before the court is the State of Georgia's motion to remand this case back to the State Court of Houston County. Defendant removed the case on March 13, 1996, under the provisions of 28 U.S.C. § 1442a which allows for the removal of certain state criminal prosecutions against members of the armed forces. The State contends that removal under § 1442a was improper because Defendant has not presented a federal defense to the state criminal prosecution. The court heard oral arguments on the matter on May 21, 1996, and now issues the following order.

## FACTS

The facts of this case are undisputed. On February 11, 1996, Defendant was involved in an accident in Bonaire, Georgia. At the time of the accident Defendant was on active duty with the United States Air Force, assigned to Robins Air Force Base, Georgia, and was driving a military vehicle which was part of a military convoy.

While operating his vehicle in the convoy, Defendant turned left at the intersection of State Highways 96 and 247 in front of an oncoming car. The oncoming car struck the front of Defendant's vehicle and traveled under it before coming to a stop. The driver of the oncoming car was killed in the accident. As a result of an investigation by the Houston County Sheriff's Department, Defendant was charged with violations of O.C.G.A. § 40–6–393(b) (Homicide by Vehicle) and O.C.G.A. § 40–6–71 (Vehicle Turning Left—Failure to Yield). Upon commencement of his criminal prosecution in state court, Defendant filed a notice of removal under § 1442a. Immediately thereafter, the State filed its motion to remand.

## CONCLUSIONS OF LAW

The removal statute employed by Defendant, 28 U.S.C. § 1442a, provides [1]:

---

1. In his original Notice of Removal Defendant stated that he sought removal under 28 U.S.C.

§ 1442(a). After receiving the State's Motion to Remand, Defendant filed an Amended Notice of

A civil or criminal prosecution in a court of a State of the United States against a member of the armed forces of the United States on account of an act done under color of his office or status, or in respect to which he claims any right, title, or authority under a law of the United States respecting the armed forces thereof, or under the law of war, may at any time before the trail or final hearing thereof be removed for trial into the district court of the United States for the district where it is pending in the manner prescribed by law, and it shall thereupon be entered on the docket of the district court, which shall proceed as if the cause had been originally commenced therein and shall have full power to hear and determine the cause.

The parties agree that Defendant meets the first requirement for removal under § 1442a—Defendant is a member of the armed forces of the United States. The parties disagree, however, on the meaning of the language, "on account of an act done *under color of his office or status.*" Defendant does not specifically explain how the court should interpret this phrase. He does, however, argue that the language is broad enough to include his act of operating a military vehicle in a military convoy engaged in a military exercise. The State, on the other hand, argues that the phrase requires that, for removal to be proper, the defendant must assert a colorable defense based upon federal law.

The State derives its argument from the Supreme Court decision *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99

(1989). The removal statute at issue in *Mesa* was 28 U.S.C. § 1442, the general removal statute for federal officers. Section 1442 provides:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

(2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties;

(4) Any officer of either House of Congress, for any act in the discharge of his official duty under an order of such House.

In interpreting § 1442(a)(1), the *Mesa* Court decided that the phrase "under color of such office" imposed a requirement that federal officers seeking removal must first raise a colorable defense based upon federal law. *Mesa,* 489 U.S. at 138–40, 109 S.Ct. at 970. The court based its opinion on Congressional intent in passing the federal officer removal statute and Supreme Court precedent interpreting § 1442 and its "long line of statutory forebears." *Id.* at 125–27, 109 S.Ct. at 963.

---

Removal in which he corrected his "typographical error" of seeking removal under § 1442(a). Defendant stated that he had meant to remove his case on the basis of 28 U.S.C. § 1442a. The State opposes this amendment to Defendant's original Notice of Removal. However, given the great similarity of the two cites and the ease with which the typographical error asserted by Defendant can be made, the court will allow Defendant to amend his removal petition. In making this decision, the court notes that typograph-

ical errors when referring to the code sections at issue are fairly common. In fact, in *Montana v. Christopher,* 345 F.Supp. 60 (D.Mont.1972), a reported case, a district court made the same citation error when referring to § 1442a. The court in that opinion cited to § 1442(a) but clearly intended the reference to be to § 1442a, as evidenced by its referral to the section which, "provides for the removal ... of criminal prosecutions in state courts against a member of the Armed Forces...."

The language of §§ 1442(a)(1) and 1442a are strikingly similar. With regards to the scope of the actions removable, the only difference between the two sections is the addition of the words "or status" to § 1442a. Historically, however, the courts have not interpreted this addition as being remarkable. When called upon to interpret the scope of § 1442a (or its predecessors) courts have routinely referred to cases involving § 1442 (or its predecessors) for guidance. *See, e.g., Florida v. Simanonok,* 850 F.2d 1429, 1430 (11th Cir.1988) (court relied on an earlier Supreme Court case which interpreted the predecessor statute to now § 1442 to state the prerequisites to removing a state criminal prosecution under § 1442a); *Puerto Rico v. Santos–Marrero,* 624 F.Supp. 308, 309 (D. Puerto Rico 1985) ("The criteria utilized to determine whether or not the criminal proceedings should be continued in the federal system is essentially the same under both removal statutes."); *In re Marriage of Smith,* 549 F.Supp. 761, 765–66 (D.Arizona 1982) ("[T]he wording of 28 U.S.C. § 1442(a)(1) is sufficiently similar to that of § 1442a that several courts have used the same test for removal under both statutes"); *Ohio v. Dorko,* 247 F.Supp. 866, 867 (N.D. Ohio, W.D.1965) (finding it necessary, due to the paucity of case law applying § 1442a, to examine the "similar" provision at § 1442(a)); *Naas v. Mitchell,* 233 F.Supp. 414, 416 (D.Md.1964) ("[T]he test for removal under section 1442a would appear to be the same as for removal under section 1142(a)(1)...."); 1A James W. Moore & Brett A. Ringle, Moore's Federal Practice, ¶ 0.164.2, at 395

(2d ed. 1996). ("The language in § 1442a, which deals with removal by members of the armed forces, is comparable to that of paragraph (1) of § 1442(a)."). In light of this case law and the similarity of the two sections' language, the court concludes that it may properly look to the Supreme Court's interpretation of § 1442(a) in determining the proper scope of § 1442a.

As the Supreme Court stated in *Mesa,* members of the federal government have long been granted the option of removing certain cases brought against them in the state courts. The predecessor of § 1442 was passed in 1815.[2] *Mesa,* 489 U.S. at 125–27, 109 S.Ct. at 963. The law underwent several expansions [3] and finally took its present form in 1948. *Id.* Section 1442a's predecessor was enacted in 1916 as Article 117 of the Articles of War.[4] Since that time, the provision has undergone several minor amendments [5] and has appeared in three different titles of the United States Code.[6] The provision was finally codified at its present location in 1956.[7]

While the legislative history for § 1442a is not readily available, the legislative history of § 1442 and its predecessors has been discussed in detail by the Supreme Court. In *Willingham v. Morgan,* 395 U.S. 402, 404–06, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969), and again in *Mesa,* 489 U.S. at 126, 109 S.Ct. at 963, the court stated the obvious purpose of enacting removal statutes for federal officers:

> [T]he Federal Government "can act only through its officers and agents, and they

**2.** Act of February 4, 1815, § 8, 3 Stat 198. This removal provision was originally part of a customs statute. The law constituted "an attempt to enforce an embargo on trade with England over the opposition of the New Englant [sic] States, where the War of 1812 was quite unpopular." *Willingham v. Morgan,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969).

**3.** The act was expanded in 1833 in response to South Carolina's threats of nullification. *Mesa,* 489 U.S. at 125–27, 109 S.Ct. at 963. Congress expanded the provision again during the Civil War era in an effort to tighten enforcement of the country's revenue laws. *Id.*

**4.** Act of Aug. 29, 1916, § 3, 39 Stat. 619, 669.

**5.** Act of June 4, 1920, Ar. 117, 41 Stat. 759, 811; Act of June 24, 1948, § 242, 62 Stat. 642; Act of May 5, 1950, § 9, 64 Stat. 146; Act of Aug. 10, 1956, § 19(a), 70A Stat. 626.

**6.** The statute was originally codified at 10 U.S.C. § 1589 and then, in 1950, was moved to 50 U.S.C. § 738. Finally, in 1956, the provision was moved to its present location, 28 U.S.C. § 1442a.

**7.** Act of Aug. 10, 1956, § 19(a), 70A Stat. 626.

must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members."

(quoting *Tennessee v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1880)). After affirming the validity of this reasoning, the *Mesa* Court carefully reviewed its removal decisions of the past century and a quarter and concluded that it had consistently read the "various incarnations of the federal officer removal statute to require the averment of a federal defense." *Mesa,* 489 U.S. at 134, 109 S.Ct. at 967.

The same Congressional rationale underlying § 1442 and relied upon by the *Mesa* Court may also be applied to removal for members of the military under § 1442a. The United States Military may only act through its officers, and those officers must necessarily act within the individual states. The purpose of the United States Military—to secure the safety of this nation—can best be achieved if the actions of the military proceed without interference by the individual states. If a member of the armed services faces a state prosecution as a consequence of his carrying out his duties as a member of the military, the federal government has an acute interest in protecting the individual for his acts taken pursuant to properly bestowed federal authority. In such a situation the availability of a removal statute is critical to the Federal Government's ability to protect its interests and ensure its proper functioning

■ In the case sub judice, Defendant was properly engaged in a military exercise at

the time of the accident. Defendant does not, however, present any federal defense to the State prosecution. For example, Defendant does not contend that he was under orders to disobey local traffic laws [8] or that the accident was the result of any order given to him by his superiors. *C.f. County of Fergus v. Christopher,* 345 F.Supp. 60 (D.Mont.1972) (removal under § 1442(a) proper where defendant, who was charged with operating a vehicle without proper lights, contended that his actions were the result of a direct order to drive the vehicle despite its lack of proper lighting). Neither does Defendant contend that, because of his participation in the military convoy, he was unable to comply with local traffic laws. Because Defendant has not presented any federal defense to his actions, this case does not appear to involve a federal issue which the United States Government has an interest in seeing litigated in the federal courts. Thus, under the reasoning of *Mesa,* this case does not appear to be the kind of case that Congress intended to have litigated in federal court. *See State of North Carolina v. Cisneros,* 947 F.2d 1135, 1139 (4th Cir.1991) (for removal under § 1442(a)(1) to be proper, military defendant must show that on-duty vehicular traffic accident "resulted from an exigency or emergency related to his federal duties which dictated or constrained the way in which he was required to, or could, carry out those duties").

This conclusion is also supported by the cases, albeit the few cases, that have interpreted § 1442a and the meaning of the phrase "under color of his office or status." *See Dorko,* 247 F.Supp. at 868 (defendant's actions were taken within the scope of his employment, but not under color of his office or status, therefore removal was improper); *Mitchell,* 233 F.Supp. at 416 (the fact that the act complained of was performed in the course of the defendant's employment is not an adequate basis for removal under § 1442a, the act must be causally connected to the defendant's official duties). In fact, the court

---

8. During oral arguments Defendant's commanding officer testified that the convoy's participants

were specifically instructed to obey all local traffic laws.

and the parties together have only identified one reported case in which a court has held that a member of the military seeking removal under § 1442a has not been required to demonstrate the existence of a colorable federal defense—*Puerto Rico v. Santos–Marrero*, 624 F.Supp. 308 (D.Puerto Rico 1985). The *Santos–Marrero* court, however, relied heavily on *Pennsylvania v. Newcomer*, 618 F.2d 246 (3d Cir.1980) in reaching its conclusion. *Santos–Marrero*, 624 F.Supp. at 310. *Newcomer* held that a federal defense was not essential for removal under § 1442. *Newcomer*, 618 F.2d at 250. That position, however, was specifically rejected by the Supreme Court in *Mesa*. *Mesa*, 489 U.S. at 138–40, 109 S.Ct. at 970. Consequently, the court doubts that the *Santos–Marrero* court would make the same decision regarding the scope of § 1442a today.

Furthermore, the Supreme Court decision of *Gay v. Ruff*, 292 U.S. 25, 54 S.Ct. 608, 78 L.Ed. 1099 (1934), which was restated in *Mesa*, causes the court to hesitate before finding that the language of § 1442a affords members of the military a broader right of removal than other federal officers. In *Gay*, the Supreme Court interpreted § 1442(a)(3). That subsection allows removal by "[a]ny officer of the courts of the United States, for any Act under color of office *or in the performance of his duties*." (emphasis added). The *Gay* court concluded that the phrase "in the performance of his duties" meant no more than "under color of office." *Mesa*, 489 U.S. at 135, 109 S.Ct. at 968. Therefore, the court held that officers of the court had the same burden as other federal officers covered by the statute—they were required to present a colorable federal defense to secure removal under § 1442. *Id.* Defendant in this case asks the court to interpret the language of § 1442a to include any acts done by a member of the military in the performance of his duties, regardless of the existence of a federal defense. The Supreme Court has declined to adopt such an interpretation even when the phrase "or in the performance of his duties" was included in the removal statute at issue. Therefore, the

court is drawn to the conclusion that such a holding under § 1442a would be incorrect.

Defendant further argues that, even without the presence of a federal defense, this action was properly removed because he can meet the "causal connection" test referred to in *Mesa*. In *Mesa*, the Supreme Court left unresolved the question of whether "careful pleading, demonstrating the close connection between the state prosecution and the federal officer's performance of his duty, might adequately replace the specific averment of a federal defense." *Id.* at 132, 109 S.Ct. at 966. In such circumstances, the Supreme Court held, pleading by traverse may warrant removal. *Id.* However, the facts at issue here do not present the court with such a case. First, Defendant has not pleaded by traverse in this action. Second, the only connection between the state prosecution and the performance of his official duties that Defendant has been able to establish is a "but for" causation. Defendant has argued that, but for his status as a member of the United States Air Force, he would not have been a part of the military convoy on February 11, 1996, and he would not have been involved in a fatal accident at the intersection in Bonaire. Such a connection cannot be the type of "close connection" contemplated by the *Mesa* Court that would replace the specific averment of a federal defense. Any act done solely to effect the performance of one's duty would satisfy such a "but for" causation test and the *Mesa* court explicitly rejected the theory that the phrase "under color of office" encompassed all acts done in the performance of a federal officer's duties. *Id.* at 123–25, 133–37, 109 S.Ct. at 962, 967–68. Consequently, the court does not find that Defendant meets the causal connection test referred to in *Mesa*. *See also State of North Carolina v. Ivory*, 906 F.2d 999 (4th Cir. 1990) (applying *Mesa*, the court found that a United States Marine involved in a traffic accident could not remove his criminal prosecution under § 1442(a)(1)).

Furthermore, the court has difficulty believing that Congress could have intended § 1442a to bring every criminal prosecution

of a military person for acts undertaken while that person was on duty into the district courts, regardless of the presence of a federal issue in the case. Congress surely did not intend to turn the federal courts into a traffic court for members of the military. In addition, the Supreme Court has strongly described its views on interfering with states' efforts to enforce its laws and protect its citizens:

> [U]nder our federal system, it goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government. Because the regulation of crime is preeminently a matter for the States, we have identified a strong judicial policy against federal interference with state criminal proceedings.

*Arizona v. Manypenny,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). As the Court recognized in *Mesa,* "It is hardly consistent with this 'strong judicial policy' to permit removal of state criminal prosecutions of federal officers ... when absolutely no federal question is even at issue in such prosecutions." *Mesa,* 489 U.S. at 138, 109 S.Ct. at 969. In this case, Defendant has identified no particular federal issue presented by his prosecution and thus, the court finds that his prosecution is properly left to the State's courts.

■ Finally, even if the court was not convinced that Congress passed § 1442a with the intent of providing a federal forum for the resolution of *federal* issues, the constitutional considerations of Defendant's position compels the court to grant the State's motion to remand. As the Supreme Court explained in *Mesa,* allowing a defendant to remove to federal court where no federal defense is at issue raises serious questions as to whether Congress exceeded its Constitutional authority in passing § 1442a. *Id.* at 135–37, 109 S.Ct. at 968.

Supreme Court case law has well established the principle that "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Consti-

tution." *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). The only possible Article III grounds for jurisdiction in this case would be the phrase, "The judicial Power shall extend to all Cases in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority...." This jurisdictional basis is commonly referred to as "arising under" jurisdiction. However, § 1442a is not a statute upon which "arising under" jurisdiction can be based. For a law to support "arising under" jurisdiction, it must do something more than merely "grant jurisdiction over a particular class of cases." *Id.* at 496, 103 S.Ct. at 1973. Rather, the law must constitute an exercise of Congress' Article I powers. For example, in *The Propeller Genesee Chief v. Fitzhugh,* 12 How. 443, 13 L.Ed. 1058 (1852), the Supreme Court found that a statute granting jurisdiction over vessels on the Great Lakes was not a law upon which "arising under" jurisdiction could be based. Upon review of the statute at issue, the Court stated, "The law ... contains no regulations of commerce ... It merely confers a new jurisdiction on the district courts; and this is its only object and purpose ... It is evident ... that Congress, in passing [the law], did not intend to exercise their power to regulate commerce...." 12 How. at 451–52. The Court employed the same analysis in *Verlinden v. Central Bank of Nigeria* to determine whether the Foreign Sovereign Immunities Act of 1976 was a statute upon which "arising under" jurisdiction could be based. In that case, the Court found that, in passing the Foreign Sovereign Immunities Act of 1976, "Congress expressly exercised its power to regulate foreign commerce, along with other specified Art. I powers." *Verlinden,* 461 U.S. at 496, 103 S.Ct. at 1973. Consequently, the Court concluded that the Act was more than a pure jurisdictional statute and could be the basis of "arising under" jurisdiction. *Id.*

The statute at issue in this case is purely a jurisdictional statute. *See Mesa,* 489 U.S. at

135–37, 109 S.Ct. at 968 (finding § 1442 to be a purely jurisdictional statute). The statute does nothing more than grant the federal courts jurisdiction over certain cases in which members of the armed forces are being sued or prosecuted. The statute does not contain any attempt by Congress to exercise any of its Art. I powers. Consequently, § 1442a cannot independently support Art. III "arising under" jurisdiction. Jurisdiction must come from another source.

■ When a federal defense is raised, that federal defense can be the basis for "arising under" jurisdiction. *Id.* "[I]t is the raising of a federal question in the [defendant's] removal petition that constitutes the federal law under which the action against the [defendant] arises for Art. III purposes. The removal statute itself merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged. *See Verlinden,* 461 U.S. at 494, 103 S.Ct. at 1971–72; *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (under the 'well-pleaded complaint' rule '[a] defense that raises a federal question is inadequate to confer federal jurisdiction'); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)." *Id.* However, without the requirement that the defendant present a federal defense, the court has no basis for jurisdiction under Art. III and the court is presented with "grave constitutional problems." *Id.* Such would be the case if the court adopted Defendant's position and did not require the averment of a federal defense under § 1442a.

■ Supreme Court precedent clearly prefers statutory constructions that avoid grave questions of constitutionality. *See Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) ("[I]f 'a construction of the statute is fairly possible by which [a serious doubt of constitutionality] may be avoided,' *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932), a court should adopt that construction.")

(brackets in original); *Mesa,* 489 U.S. at 137, 109 S.Ct. at 969. Therefore, in light of the constitutional questions Defendant's position raises, the court will not adopt the view that a defendant is not required to present a federal defense in order to properly remove a case under § 1442a.

In conclusion, for all the reasons stated above, the Court holds that Defendant has not properly removed this case under § 1442a and this case is hereby **REMANDED** to the State Court of Houston County.

SO ORDERED.