Anthony Z. MARGAN, Plaintiff,

v.

CHEMETRON FIRE SYSTEMS, INC. and Figgie International, Inc. and Badger Fire Protection, Inc. and Chemetron Corp. and Allegheny Ludlum International and Automatic Sprinkler Corp. of America and Williams Holding Corp. and Williams Holding, P.L.C. and Maxon Corp., Defendants,

v.

NORFOLK SHIPBUILDING & DRY-DOCK CORP. and Hiller Systems, Inc. and Jason B. Nuss and Wayne Francis Muth and Edward Speary, III, Defendants and Third–Party Plaintiffs,

v.

ESTATE of William B. TUREK, deceased, and Michael G. Miller, executor, and Sadie R. Richardson, administratrix, and United States of America, Third–Party Defendants.

and

Isabella SERVIS, Administratrix of the Estate of Peter Humphrey, Plaintiff,

v.

FIGGIE INTERNATIONAL, INC. and Chemetron Corp., Defendants,

v.

NORFOLK SHIPBUILDING & DRY-DOCK CORP. and Hiller Systems, Inc. and Jason B. Nuss and Wayne Francis Muth and Edward Speary, III, Defendants and Third–Party Plaintiffs,

v.

ESTATE of William B. TUREK, deceased, and Michael G. Miller, executor, and Sadie R. Richardson, administratrix, and United States of America, Third–Party Defendants.

Civil Action Nos. 2:96cv941, 2:96cv942.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 28, 1997.

Jeffrey Arnold Breit, Breit, Drescher & Breit, Norfolk, VA, for Anthony Z. Margan.

Saul Geoffrey Glick, Stephen C. Swain, Frances W. Russell, Clark & Stant, P.C., Virginia Beach, VA, for Isabella Servis.

William James Pantele, Butler, Macon, Williams, Pantele & Lowndes, P.C., Richmond, VA, for Figgie International, Inc.

James A. Gorry, III, Richard William Zahn, Jr., Taylor & Walker, P.C., Norfolk, VA, for Maxon Corp.

Donald Charles Schultz, Crenshaw, Ware & Martin, Norfolk, VA, for Norfolk Shipbuilding & Drydock Corporation, Hiller Systems, Incorporated, Jason B. Nuss, Wayne Francis Muth, Edward Speary, III, Wayne Francis Muth.

Donald Charles Schultz, James Long Chapman, IV, Guilford D. Ware, Crenshaw, Ware & Martin, Norfolk, VA, for Edward Speary, III.

Michael Anson Rhine, United States Attorney's Office, Norfolk, VA, Matthew A. Connelly, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for U.S., William B. Turek, Michael G. Miller, Sadie R. Richardson.

### ORDER AND OPINION

DOUMAR, District Judge.

These two cases were consolidated by Order of the Court on November 4, 1996, and both present common issues for decision. Case Number 2:96cv941 is styled *Margan v. Chemetron Fire Systems, Inc. et al.*, Case Number 2:96cv942 is styled *Servis v. Figgie International, Inc. et al.* Currently pending in the *Servis* case is a motion to remand. This Court denies the motion to remand for the reasons stated below.

## I. Factual Background

These cases arise out of the same incident: A massive release of carbon dioxide ("$CO_2$") aboard the M/V CAPE DIAMOND, a roll-on/roll-off cargo ship owned by the United States Maritime Administration ("MARAD"), an agency of the U.S. Department of Transportation.[1] The release of the $CO_2$ killed two people and injured at least one other. The CAPE DIAMOND is part of the Ready Reserve Force, a fleet of vessels used to transport military cargo during military emergencies. At the time of the accident underlying the litigation, the CAPE DIAMOND was being operated for MARAD by Marine Transport Lines, Inc. ("MTL"), a private corporation.

In May 1992, MTL contracted with Norfolk Shipbuilding and Drydock Company ("Norshipco") to "deactivate" the CAPE DIAMOND; in November, a decision was made to place the ship on a "reduced operating status" instead. In October 1992, Norshipco subcontracted some of the work to Hiller Systems, Inc. ("Hiller"). Specifically, Hiller was engaged to inspect the ship's $CO_2$ fire suppression systems. Hiller reported leaks in the system that required repair. On December 15, 1992, Hiller removed the aft tank main shut-off valve and other valves and sent them for testing. After inspection, the valves were reinstalled in January 1993. On March 1, 1993, MTL hired Hiller to recharge and test the fire suppression system and certify it to the Coast Guard.

A test of the fire suppression system was scheduled for March 3, 1993, requiring releases of $CO_2$ in various areas of the ship. Hiller's employees began testing the system in the engine room. The decided to conduct a "puff test," which if performed correctly is a controlled release of a small amount of $CO_2$. The aft tank main cut-off valve was not closed completely during the test. As a result, a massive amount of $CO_2$ flooded the engine room, which had not been cleared of personnel. Peter Humphrey and William Turek, a Coast Guard lieutenant, were asphyxiated by the carbon dioxide. Anthony Margan was injured.

## II. The Servis Case

Several different suits have been filed by Isabella Servis, the administratrix of the Humphrey estate. The first suit (*Servis I*) was filed on January 17, 1994 in state court. Servis sued Hiller, Norshipco, and Jason Nuss, Wayne Muth, and Edward Speary (three Hiller employees). Norshipco removed on the basis of admiralty jurisdiction. Servis then moved for a remand. This court denied the remand. *See Servis I*, 858 F.Supp. 590 (E.D.Va.1994). The Fourth Circuit reversed, ruling that remand was appropriate in *Servis v. Hiller Systems, Inc.*, 54 F.3d 203 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 799, 133 L.Ed.2d 747 (1996) (decision based on lack of agency relationship between the defendants and the United States).

In 1995, Servis then filed another suit (*Servis II*) in state court against Norshipco, Hiller, the three Hiller employees, Figgie International, Inc., and Maxon Corporation. The action was removed to federal court. The federal court then remanded the case back to state court, where *Servis I* was consolidated with *Servis II*. Then, Norshipco, Hiller, and the Hiller employees filed a third-party motion against the Turek estate and the estate's representatives, Michael Miller and Sadie Richardson (referred to collectively as the "Turek estate"), based upon Turek's allegedly negligent actions prior to his death. Servis, the original plaintiff, then filed what was entitled a "cross-claim" against the Turek estate on September 16, 1996.[2]

---

1. The factual background is set forth in detail in the two published opinions in the primary case of *Servis v. Hiller Systems, Inc.*, 858 F.Supp. 590 (E.D.Va.1994) and 54 F.3d 203 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 799, 133 L.Ed.2d 747 (1996). The following is a brief recitation of the facts, distilled from those two opinions.

2. The Court notes that a cross-claim would typically be asserted against another party defendant. The "cross-claim" filed by Servis should more properly be regarded as amending Servis's complaint to name the Turek estate as a direct defendant. *See* Fed.R.Civ.P. 14 ("The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. . . .").

The United States, acting on behalf of Turek because he was an armed forces member, filed for removal back to federal court. The removal petition states that removal is appropriate under "28 U.S.C. § 1442a because all claims against the third-party defendants stem from actions taken by William B. Turek, deceased, an officer in the United States Coast Guard, while he was acting under color of his office."[3] Alternatively, the United States claims that removal is proper under 28 U.S.C. § 1441 because the suit arises out of events covered under original admiralty jurisdiction. Servis opposes the removal and seeks a remand.

Norshipco and the Hiller defendants recently filed a third-party action directly against the United States.

## II. The Margan Case

The *Margan* case, Number 2:96cv941, was filed in state court in October 1994. Margan named as defendants a group of companies associated with various equipment, and a group including Norshipco, Hiller, and the three Hiller employees. The Hiller and Norshipco defendants sued the Turek estate as a third-party defendant. The United States, again acting on behalf of Turek, asserted the same grounds for removal as it did in the *Servis* case. The original defendants in this case also recently filed a third-party complaint directly against the United States. Unlike Servis, Margan has not opposed the removal of his case.

3. Unfortunately, immediately preceding § 1442a in Title 28 of the United States Code is § 1442(a). Both of these statutes are removal statutes and they are similar in substance, generating considerable confusion. Section 1442a allows removal by members of the armed forces. Section 1442(a) allows removal by officers of the United States. Both of these statutes have been referred to in the briefs filed in this case, and courts have employed identical analyses when considering Section 1442a and Sections 1442(a). See *Georgia v. Westlake*, 929 F.Supp. 1516, 1519 (M.D.Ga. 1996) (citing numerous cases that interpreted the statutes analogously). Accordingly, cases interpreting § 1442(a) have been cited as authority in this opinion.

4. Counsel so agreed at a hearing held on January 16, 1997. Earlier filings did claim Turek was

## IV. The Propriety of Removal and Remand

■ 28 U.S.C. § 1442a provides that:

A civil or criminal prosecution in a court of a State of the United States against a member of the armed forces of the United States on account of an act done under color of his office or status, or in respect to which he claims any right, title, or authority under a law of the United States respecting the armed forces thereof, or under the law of war, may at any time before trial or final hearing thereof be removed for trial into the district court of the United States....

One of the main purposes of this removal statute is to allow United States armed forces members an opportunity to raise any possible defenses in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969).

■ All parties agree that Turek acted in his official capacity as a Coast Guard Officer when he conducted testing of the fire suppression system.[4] Members of the Coast Guard are members of the United States Armed Forces, 10 U.S.C. § 101(a)(4), and thus may permissibly invoke removal under 28 U.S.C. § 1442a. The status of Turek's estate as a third-party defendant rather than as an original defendant does not affect its right to remove under 28 U.S.C. § 1442a.[5] See *IMFC Prof'l Servs. of Florida. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 156 (5th Cir.1982) (construing § 1442(a)); *Davenport v. Borders*, 480 F.Supp. 903, 905

not acting under color of his office. That argument is rejected because it would too narrowly construe the scope of Turek's job and the immunity conferred. See *Willingham*, 395 U.S. at 407, 89 S.Ct. at 1816 (noting that the removal statute should not be interpreted in a "narrow, grudging" manner).

5. Additionally, the Court notes that Plaintiff Servis filed what was entitled a "cross claim" against Turek's estate, placing his estate in the same procedural posture as if Servis had originally sued it. By both opposing removal and maintaining a suit against the Turek estate, Servis attempts to have her cake and eat it, too. Even if the Turek estate could not remove as a third-party defendant, it could properly remove as a direct defendant in the suit brought against it by Servis.

(N.D.Ga.1979) (same). Section 1442a requires that the armed forces member's acts must arise under "color of office." In order to satisfy § 1442's "color of office" test, there must be a "causal connection" between the actions attributed to the officer and the authority under which the officer acted. *Willingham*, 395 U.S. at 409, 89 S.Ct. at 1817. Turek clearly meets that requirement. The plaintiffs' injuries are attributed to Turek's alleged negligence in conducting the testing, and Turek's participation in the test was a required Coast Guard duty.

■ Servis argues that the estate of Turek failed to raise a defense arising out of Turek's duty to enforce federal law, and that this failure to allege a defense forestalls removal. Some cases do set forth a two-part test for removing under 28 U.S.C. § 1442(a), requiring that a defendant invoking § 1442(a) removal allege a "colorable defense arising out of a duty to enforce federal law" and a "causal connection" between the actions of the officer and the suit. *See Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427–28 (11th Cir.1996) (based upon *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)). Most of the cases in which the failure to state a federal defense has been an issue involve a fact pattern such as an auto accident, in which the officer's allegedly negligent actions were not purely official. *See, e.g., North Carolina v. Ivory*, 906 F.2d 999 (4th Cir.1990). Removal in these cases has troubled courts when the defendant fails to set forth a federal defense. *Id.* at 1001 (remanding the case because of defendant's failure to specify a defense of federal immunity).

The estate of Turek's potential defense in this case is that Turek (and derivatively Turek's estate) is immune from suit under 46 U.S.C. app. § 745. Section § 745 of the Suits in Admiralty Act provides that a suit against the United States is a plaintiff's ex-clusive remedy "for causes of action arising out of the operation of vessels owned by or operated for the United States." *Manuel v. United States*, 50 F.3d 1253, 1255 (4th Cir. 1995). Thus, Turek may be immune from suit under this provision. This potential defense of immunity under Section 745 is not, however, explicitly set forth in the removal petition.[6]

Although *Ivory* seemingly indicates that a defendant's failure to specify the federal defense is fatal, a later case from the Court of Appeals for the Fourth Circuit did not require precision in specifying a defense. *See Jamison v. Wiley*, 14 F.3d 222 (4th Cir.1994). The *Jamison* Court allowed removal despite the bare-bones notice of removal, reasoning that:

> In his removal petition, Wiley specifically alleged, as the basis for removal, that Jamison's charges were based on "acts allegedly done by [Wiley] under the color of his office as an employee of [the] United States," while he was "acting within the scope of his employment" as a "Supervisory Coal Mine Safety and Health Inspector for the United States Department of Labor." These allegations were sufficient to give rise to a colorable claim of absolute immunity under the Westfall Act, the validity of which Wiley was entitled to have judged by federal standards in federal district court.

*Id.* at 238 (citations omitted). The Court noted that a mere recitation of the words "color of office" in a notice of removal would be insufficient to support removal, but that the Court may look beyond the notice of removal and may consider the case as a whole to determine if removal is proper. *Id.* at 238–39 n. 17. This Court finds pursuant to *Jamison* that a sufficient basis for removal has been established in this case.[7]

■ Plaintiff also argues that the naming of the Turek estate is merely a ruse to keep

---

6. Immunity is mentioned in the notice of removal, but the reference relates to the United States's alternative argument that removal is proper under 28 U.S.C. § 1441.

7. The United States requested that it be allowed to amend the notice of removal if it is deficient. Amendment of the notice of the removal has been permitted in similar circumstances. *See Willingham*, 89 S.Ct. at 1816 n. 3; *see generally Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 939–41 (E.D.N.Y.1992) (discussing various types of amendments). Accordingly, even if the Court viewed the notice of removal as deficient, it would allow the notice to be amended.

the case in federal court because the defendants anticipated that the estate of Turek would soon be dismissed based on Turek's probable immunity from suit under the Suits in Admiralty Act. Even if this characterization were accurate, the propriety of removal is judged at the time the removal petition is filed. *United Farm Bureau Mut. Ins. Co. v. Metropolitan Human Relations Comm'n,* 24 F.3d 1008, 1014 (7th Cir.1994). In this case, Turek was named as a defendant in good faith, and this Court's jurisdiction was not fraudulently obtained. Accordingly, removal is proper, and the estate of Turek is entitled to have any federal defenses which might result in dismissal heard in federal court. If the predicate for the exercise of federal jurisdiction later dissipates, the Court may retain discretion to remand the case to state court. *See Murphy v. Kodz,* 351 F.2d 163, 167–68 (9th Cir.1965); *IMFC,* 676 F.2d at 160.

■ Servis has further argued that removal is improper under 28 U.S.C. § 1442a because the statute allows a member of the armed forces to seek removal, not the estate of an armed forces member. This Court disagrees. Admittedly, at common law, actions did not survive a party's death. Virginia, however, adopted a survival statute to change that result. *See* Va.Code Ann. § 8.01–25 (providing that "[e]very cause of action whether legal or equitable, which is cognizable in the Commonwealth of Virginia, shall survive either the death of the person against whom the cause of action is or may be asserted...."). The general rule is that the estate of a deceased steps into the legal shoes of the deceased. *McAlpin v. Leeds & Northrup Co.,* 912 F.Supp. 207, 209 (W.D.Va. 1996).

In these cases, the suits against the estate of Turek are based on Turek's allegedly negligent acts before his death, not the negligent acts of the representatives of Turek's estate. In the words of Virginia's survival statute, Turek is "the person against whom the cause of action is asserted," and the suit against him survives his death. Thus, the suits against Turek's estate necessarily complain of acts of Turek himself, even though he is deceased. Because Virginia statutory law provides that any action against Turek survives his death, the suit retains its fundamental character as a suit against Turek for acts committed prior to his death, despite the suit being titled in the name of the administratrix.

Although this Court's research did not unearth a case directly dealing with this precise issue, a case from the Court of Appeals for the Sixth Circuit impliedly assumed that removal under 28 U.S.C. § 1442a by the estate of an officer was proper by upholding a removal challenged on other grounds. *See Stein–Sapir v. Birdsell,* 673 F.2d 165, 167 (6th Cir.1982) (upholding removal by the administratrix of a deceased federal officer after the officer died during the pendency of the lawsuit and subsequently abating the action against the estate because the cause of action did not survive the officer's death). In addition, the Court sees no reason to depart from the rule that the estate steps into the shoes of the deceased when considering the estate's right to remove, especially when the "person against whom the cause of action is asserted" is a member of the armed forces acting under color of his office. If the estate of an armed forces member is not allowed to remove the case to federal court, a state court would assess the actions and defenses of an United States armed forces member in performance of his office—the exact situation the statute was designed to avoid.

Therefore for the above reasons, removal is proper under 28 U.S.C. § 1442a and Servis's motion to remand is denied. Because this Court holds that removal is proper under 28 U.S.C. § 1442a, the Court need not address whether removal under 28 U.S.C. § 1441 also would be appropriate.

The Clerk of the Court is DIRECTED to forward a copy of this order to counsel for all parties.

IT IS SO ORDERED.